Argument is not to exceed the limits of the side, and so I am voting for the apology. Good morning. Good morning. Your Honor, I'd like to reserve two minutes of my time for rebuttal. All right. Your Honor, I may please the court. Opposing counsel. The district judge in this case imposed an upward variance that was nearly double the guidelines range. And the issue that brings us here today is how the district court got there, and specifically the legal errors the district court committed in imposing the significant variance at issue. First, the district court failed to properly credit and consider the impact of my client being shot in the head in 2001 on his mental health, his struggle with mental illness, and his subsequent criminal history. As we've noted, Mr. Lee had no criminal history points before being shot in the head. He accrued all of his criminal history points after being shot in the head. And that matters. That matters because the district court and the government would have you believe that Mr. Lee has been this, has a long and extensive and uninterrupted criminal history since 13. But that's not the case. In fact, we see a clear division. Before being shot in the head, no criminal history points. After being shot in the head, all of his criminal history points. And to this point, the cases in this court, Moses and Arnold that we've cited, have made clear that an upward variance based on the need for psychiatric and mental health treatment is substantively unreasonable. Specifically, with respect to the Arnold case, on page 437 of the Arnold case that we've cited, this court stated that mental illness can't justify an upward departure under the guidelines. Exactly what happened here. Is it your view that the district court, the sentencing court, actually said we need to give your client a higher sentence because of his mental illness? I think the relationship between mental illness and criminal history is clear. Wouldn't that suggest that if somebody has an incredibly egregious record and the district court bases it on that egregious record, that you could come back and say, well, he has an egregious record because of mental illness and so the enhancement is actually based on the mental illness. That doesn't strike me as palatable if he's setting aside the mental illness, relying on the consistent pattern of parole violations. Certainly, let me address that in a couple parts. In the first part, I would say that here, the relationship is clear. As a preliminary point, the relationship is clear. I think Mr. Lee's trial counsel below did say on page 10 of the sentencing transcript, he's identified, he, Mr. Lee, has identified the underlying issue, his mental health. And in response to that, on page 21 of the sentencing transcript, the district court states, well, mental health and assessment are needed because, in my view, that's a key component in what Mr. Lee needs to live a law-abiding life. That's a direct connection. And it's even greater than that. It gets back to the shot in the head, Your Honor. It specifically says on page 30, the district court says, and it certainly warrants, this is right after talking about the shot in the head, it certainly warrants and supports mental health assessment and treatment. I think that's the first point. The second point, I think, to your question, Judge Murphy, you know, Arnold says this. Arnold says mental illness can't justify an upward departure. And, quote, even if, this is page 437, even if that mental illness creates a potential danger for violent behavior. And I think that the sentencing guidelines contemplate this, and so does federal law. They contemplate this and believe that, in instances like you've described, the proper course might be a civil commitment proceeding. It might be mental health rehabilitation. But it's not by lengthening the sentence. It's not by imposing an upward departure. It's very difficult for me to see. So the district court talked about mental health, and not in terms of the enhancement, but in terms of the counseling or whatnot in the prison setting. And when it was talking about the enhancement or actually the length of the sentence, it was talking about the consistent pattern of parole violations, the pattern of prison misconduct. He mentioned, like, this one page in particular where it just said parole violation, parole violation all the way down. So I struggle to see how it is wrong to rely on that, simply because your view is that a lot of this criminality was caused by the mental health. Well, specifically on the parole violations, I would say that in the 28J briefing in this court, we've noted that he received criminal history points but for those parole and probation violations. Do you think that that explains at least one of the parole violations may have been taken into account by the guidelines, but do you think all of them were taken into account? Because I think only one of them would trigger, as long as it's within the relevant years, would trigger the criminal history enhancement for the prior crime. But here it's kind of several of them, I would say. Right. Well, two responses there. The first is that the first probation violation does trigger three criminal history points, as we've noted, but the last violation also triggers points because he received two points here under 4A1.1 because he was on parole or on probation at the time of the incident offense. So certainly it's more than one. But I think the greater point here, the higher level point, is that the guidelines contemplate this. I think the guidelines, it's important, I think, to note the guidelines aren't some slapdash perfunctory effort. They represent the reasoned judgment of judges, lawmakers, practitioners, and they're there to promote justice but also reduce sentencing disparities. It is part of promoting justice. And I think – And is that in line with our more recent cases on substantive reasonableness? Have you had an occasion to look at our Herrera Zuniga case that quotes Kimbrough? The idea being you ask the question whether your case is in the mine run of cases and then whether you are within that and then how that relates to the substantive reasonableness of enhancements after that. How does your case fit within the United States Supreme Court Kimbrough analysis for substantive reasonableness? Certainly, Your Honor. And Judge Strang, I think I would direct the Court's attention. This case was recently published by this Court last month, the Boucher case that you were on. And I would say on page 708 of your case – excuse me, this Court's case of which you were on the panel, quote, when criminal history is already incorporated into the guidelines recommended sentence, the variance and upward variance is inconsistent with the need to avoid unwarranted sentencing disparities, citing Kimbrough and citing some of the other Supreme Court precedent that you just mentioned. And I think that's important because we would say here that, you know, the District Court and opposing counsel would have you believe that somehow Mr. Lee lucked into his understated criminal history category. That's simply not the case. Mr. Lee had a criminal history category of five. That's the second highest criminal history category you can have under the guidelines. But even if you were to assess additional points for the probation violations or the parole violations or some of the other conduct, you'd get to the highest criminal history category of six and you'd have a guidelines range of 33 to 41 months. That's still significantly below the 60 months that Mr. Lee, in fact, received. And I think that gap is a substantive and reasonably gap. Excuse me. So is this a case that you say we are, our review standard is to provide closer review to what occurred in this case to the Senate? Certainly, Your Honor. What does this closer review look like? Well, I think it's a closer review that looks at, you know, what the District Court considered and beyond the mental illness issue, which I think is a legal error. The other legal error that the District Court committed was to fail to credit undisputed facts with respect to the involuntary manslaughter adjudication. As we've noted, because this sentence is outside the guidelines range, it doesn't have a presumption of reasonableness. And this Court engages in search and review, and when it engages in that review, I think it's clear that the District Court declined to recognize the undisputed facts as to that involuntary manslaughter. Still, the District Court did recognize that the involuntary manslaughter didn't get your client any criminal history points right, but it's still a pretty significant conviction. I know your point of view is that it was roughhousing, but somebody lost their life and your client was prosecuted for a reckless crime. I mean, I don't think it's, that's something that's not taken into account by the guidelines, I suppose, because it didn't generate a higher criminal history score. And it could have been, you know, a tragic mistake, but it was still a mistake that led to a finding of recklessness. Certainly, Your Honor, and I think we're not trying to say that's not a significant adjudication, but we are trying to say that there are significant mitigating circumstances here. And the mitigating circumstances presented, as you've noted, are roughhousing, or that this was a product of roughhousing, juveniles, kids playing in the water. It wasn't malevolent conduct. It wasn't malicious conduct. And you're right, the district court may have recognized that those were the undisputed assertions put forward by defense counsel, but it went one further step, and that step was improper. It went one further step by casting aside those undisputed circumstances and saying that's the defense theory of the case. I think the entire point of this Court's precedent in Davey and Brandon and Treadway is to say when these facts in the PSR are undisputed, then there's no reason for the court to go outside of the PSR. And specifically with respect to the involuntary manslaughter adjudication, I'd note that my client put together these mitigating facts in November 2018. In the intervening 12 months, opposing counsel didn't object to the PSR, hasn't objected at sentencing, and hasn't even objected in briefing before this Court. Yet nevertheless, the district court here committed legal error when he decided to cast these aside and say, well, that's the defense theory of the case. Either way, this is the beginning of Mr. Lee's criminal history and criminal record. I think that that goes far afield from what this Court's precedents have to say. The entire point of Mr. Lee providing these mitigating circumstances and for this Court to have these precedents in Davey and Brandon is that there is no other way. There is no either way. The mitigating circumstances here show that these juvenile adjudications are not the product of malevolent conduct, not the product of the criminal conduct that we want the sentencing guidelines to reach and impose penalties upon, and that considered in context, before being shot in the head, no criminal history points. After being shot in the head, all of those criminal history points. And that, I think, comes back to the core point at issue. If you decide to accept the undisputed circumstances, undisputed mitigating factors here, you'll see that an upward departure isn't warranted. I think Mr. Lee does have a serious criminal history. I think his sentencing guidelines reflect that criminal history. And what the district court did here was to upward depart despite that fact and upward depart for improper reasons as a result of that. What do you make of the, I guess it's just an equitable point, but the district court did seem to be acting conscientiously and sua sponte catching that crime of violence error. So I don't know that we can say that the district court was kind of irrationally out to get your client when it was the district court that discovered this crime of violence error. And if that error had gone into your guidelines, it would have jumped from 57 to 71 months. I don't know. It's just maybe a high-level equitable point that I thought. I don't know if you want to opine on it. Certainly, Your Honor. And I think that that's one of the reasons we decided to pursue a substantive reasonableness challenge because I think core to a procedural reasonableness challenge is whether the guidelines are correctly tabulated. And I think they were in this instance. The second point, and I agree that the district judge did reach the correct result, but had he, for instance, not reached that result, I think we would be subject to plain error review here. And I think we would argue under Olano and under the other cases in this court that there was plain error here because, as the trial counsel pointed out, the state statute does sweep more broadly than the federal statute. And I think, again, even though, and I see my time has expired. May I finish my time? Go right ahead. All right. Thank you. I think that the idea is certainly, yes, the district court made the right conclusion when it came to the guidelines range. We're not disputing that. What we are disputing is how did he get from the guidelines range to the final sentence that was imposed that was nearly double that range. I think we've noted those legal errors, and I think those legal errors are grounds for reversal. Thank you. Counsel, I know you're out of time, but let me ask you about the issue of your client's mental illness. I see that he was said to be at various times suffering from such things as depression, anxiety, paranoia, but he was not actually diagnosed as mentally ill. Is that an accurate statement? I think the record on this is a little bit unclear, Your Honor, but I think that certainly that's probably Let me rephrase. Do you have any information that you could provide us that he had received a diagnosis of being mentally ill? No, I don't. But if I can just finish that thought, I think that this is something that the district court can challenge and the government's not challenging, that I think that after being shot in the head, that he really did suffer, and I think it's reasonable to imagine that he really did suffer some mental health issues, and I think it's borne out in his criminal record as a result. All right. Thank you very much. Thank you. My name is Timothy Verhea. I represent the United States in this case, and I was also the prosecutor below. So what we have here is a question of whether the district court has the discretion to sentence the defendant to 60 months, which was half the statutory maximum here, for a defendant that, beginning at age 12, up to age 37, when the Kalamazoo police pulled him over with that loaded, stolen .357 revolver, a period of 25 years, which represents an unbroken chain of law-breaking behavior, because during that 25 years, if you look at the pre-sentence report, the defendant committed 11 crimes. He had 12 parole violations. He had 27 prison misconduct violations, and at the time he was arrested, he had not one but two outstanding warrants for absconding from supervision. You're going to have to look a long time before you see a defendant that has that kind of behavior leading up to the offense that brings him before the district court. Pardon me? Can you go through and tell us which of these things would not have already been taken into account by the guidelines? Because as Judge Strang suggested, the mine run of cases are cases that should fall within the guidelines range, and you have to show facts or circumstances for this particular defendant that would not be adequately taken into account with the guidelines range of the 30 or so months. Sure. As everybody here knows, what the guidelines do is count convictions within a 15-year period or thereabouts, depending on the length of sentence, and assign them points. The things that aren't captured here by that kind of numerical assessment is, first of all, the unbroken nature of the criminal behavior. That jumps out to anybody that has a reasoning brain to say every time this man is allowed out, he immediately commits a new crime or new offense that puts him back in. That doesn't fit into the numerical calculation that the guidelines look at. They never count prison violations, and here we've got 27. They don't count parole violations. Here we've got 12. And the other kind of mine run issue we have here relates to the offense itself. We're talking about an offense that makes it illegal to possess a stolen firearm. That can happen in a broad range of behaviors. I could be pulled over by the police and have a stolen firearm at home in my house. If they found it, that would make me guilty of possessing a stolen firearm. I could be committing a crime with a loaded stolen firearm, and that could also be. That's at the other end of the spectrum. Here, of course, we've got Mr. Lee being pulled over by the police who, by the way, aren't even looking for him other than the fact he's got two outstanding warrants for being a fugitive. And not only do they find him, they have to physically subdue him because he tries to break away and run. They have to tackle him. And only after they're able to put handcuffs on him and pick him up off the ground, they see the whole time that they were dealing with him, he had this loaded stolen .357 Magnum. So that, I would submit, puts it at the far end of the dangerousness spectrum for the crime itself. So there are a number. Your opposing counsel argues that his parole violations are already baked into the guidelines range because, for example, his criminal sexual conduct charge was added to his criminal history points only because of his parole violations. So why aren't those already considered? Well, because he could have gotten that three points if he'd had one, and he had seven just for that offense. So he gets a free pass on six. Is the district court not allowed to consider that there were six? I think the discretion that the Supreme Court and this court has granted sentencing courts say under 3553, you are allowed to look at the qualitative body of work that the defendant has. You're allowed to do that even though the law adjudicates additional criminal points because of a parole violation, and the law chooses not to stack those by numbers. The law says if you have parole violations, you're going to be popped up here, but it doesn't say if you have this category, you go, but we think it's more serious if you have this category and even more if you have this. The law does that all the time, but it doesn't do that here. Well, what the guideline says is that if you are on supervision or parole at the time you commit the incident offense, two points. This person was on multiple supervisions. The guideline doesn't say if there are two, just disregard the other ones. It's silent on what you do with somebody that has multiple supervisions that he's violating at the same time. I'm struggling with that argument because it would mean anytime you categorically have a leap in points or calculations, then you get to say, well, he was at the top of that category or at the bottom of that category, and it seems that the points and the way it's used is already chosen by the makers of those rules, and I'm struggling with not feeling like it's doubling down on it because now every time you're in a category, you're going to say, well, he didn't just have one, he had two, and so that means the court gets to enhance his sentence. I think that's exactly what sentencing discretion under 3553 allows the district court to do. Now that we've put aside the mandatory guidelines, you know, back in the Booker Gall days, the Supreme Court said we're not going to have a mechanistic mandatory set of guidelines that you have to slavishly follow. So if you're a sentencing judge, you have discretion to look at this defendant and this offense and fashion an appropriate sentence. So the response is what does substantive reasonableness tell us and how do we look at it? And if in fact you have someone who is in generally the mine run of cases, then the instructions to a reviewing court is if there's a big enhancement there outside the mine run, we have a disparity issue, and that means we give it closer review of what the court did. Isn't that correct? Correct. Here's what the guardrails are as I understand them based on what this court or the Supreme Court has said. One guardrail is it's not an abuse of discretion just because a three-judge panel at the appellate stage would have sentenced the defendant differently. Gall says that, the Hoff case that we cited in our brief, and many other cases say that. So that's one thing that we know. The other thing that this court has said about what discretion means and what it doesn't is that if you find yourself at the court of appeals level being asked to reweigh factors that were considered by the district court, that should be a signal to you that you are beyond the scope of appellate review because the court of appeals, so says this court in the Hoff and Eli cases and many others, that's beyond the scope of appellate review. So I think it's crucially important here that the sentencing judge here was presented with and did consider both things that you're now being asked to look at again on appeal. What happened when the defendant killed the other child at age 12? That was considered by the district court. And the defense argument that I got shot in the head in 2001, so everything I did thereafter shouldn't count against me because the district court did respond to that. Well, I guess the problem is that in looking at the 3553 factors, we have to look and see what was the basis for the court's decision. Agree, we cannot substitute judgment. Of course you can't. But if the basis is ultimately that we're looking at criminal history, we know criminal history is already baked into the guidelines. So the question is whether this is, upon closer review, something that would make this sentence inside the mine run and outside the appropriate explanation for the degree of enhancement that was given. Well, my response to that would be my understanding of discretion means a district judge, when presented with somebody that's, let's take a ridiculous example, a defendant who has committed 100 crimes before he or she is before the sentencing judge, and only five of them got points. I don't think a district court has to put the blinders on and say, I'm just not going to consider the 95 that weren't assigned numbers by the guidelines. And would closer review say, he's gotten three points for these 95, and I don't think that's adequate, but this court looks back, and what the judge said was, and 94 of them were traffic violations. Doesn't that matter? You could say, in that example, if they're all minor, you could step in and say. And that's why there are no points. Well, maybe, maybe because of the age. Let's remember, and I started this example, but let's remember. We have an age 12 homicide, involuntary manslaughter. The defense said they tried to airbrush it away by saying, well, it was rough housing. But I hope you take a really close look at what the defense actually said to the district court. How this crime happened is mentioned two times before the district court. Once in the pre-sentence investigation report, where the defendant says, I don't clearly remember what happened. Kids always roughhoused at that swimming hole, and tragically somebody got killed. He didn't say, this is what happened in this case. In the defendant's sentencing memo, the only thing that's said about how this offense happened was how upset the defendant's mother was when the police called and said, we think your son's responsible for how this crime occurred. So the district court says, okay, either way, whether it's roughhousing under the defendant's theory, because he never really said, this is what happened, take my word for it. Either way, somebody died. And we know that from the Georgia involuntary manslaughter statute. When you admit offense, you say, I engaged in illegal conduct that resulted in the death of another human being. And the district court, I think quite properly said, I don't really care about that offense, although it's serious. Anytime somebody dies, it's serious. And hopefully we're not going to debate that. It is serious. The thing the district court was really focusing on is that started this unbroken 25-year crime spree the defendant's been on. And I think the district court drew a very reasonable conclusion that if you're going to decide what's going to happen when this defendant gets out, all you have to do is turn around and look at what he's done for the last 25 years, and you know he's going to go right back to violating the law. And so I think what the district court quite properly said is the community is going to be in danger. He should be taken out of commission, out of circulation for 60 months, because if he gets put back out on the street, he's going to go right back to endangering the community. The other issue that you're being asked to look at here was also addressed by the district court. And I want to make a couple of points before I run out of time here. First of all, I'd like to recommend to the court United States v. Tolbert, T-O-L-B-E-R-T, 459 Federal Appendix 541. That's a 2012 case from this court, and I don't think it's anything earth-shaking, but it does remind us that if somebody does present mental health issues, it doesn't necessarily mean it's mitigating. It can also be aggravating, because regardless of what happened, if it's based on some kind of mental health problem, if you're a danger to the community as a result of it, it might even be an aggravating factor. Now here, of course, the district court said, I'm just not going to excuse you for the offenses you committed after the head injury, and I hope you'll also pay close attention to what the defendant said to the district court about that head injury, being shot in the head. He never said, it explains why I committed all these offenses. At page ID 104, the only explanation or theory the defense had about the head injury relating to the offense was, it made me paranoid and anxious, that's why I had the gun. He didn't say, that's why I committed all these offenses since 2001. So there's never been any linkage made, even today, between the head injury and the pattern of behavior after it. And the district court, I think, quite properly said, I'm not really buying your argument here, because look what you did before your head injury. You killed a kid, you engaged in an armed robbery, and you had, depending on when in 2001 the head injury supposedly happened, two driving offenses. Very serious body of work, I submit, before the head injury. So just to wrap up here, from where I stand, the 60-month sentence was a very reasonable response to what the defendant did. The defendant lost these arguments before the district court. He's asking you to reverse the decision made by the district court, but I think that requires you to stand in as the sentencing court in the first instance. And I think that goes too far. The sentence that the defendant got is one that he deserves, and more importantly, the sentence the defendant got is one the community was entitled to expect. So I ask that you affirm the sentence imposed here. So unless you have any questions for me, otherwise I'm done. Thank you very much. Thank you. Your rebuttal. Your Honor, this case fundamentally is about getting from point A to point B. A guideline's range of 30 to 37 months to an actual sentence of 60 months. The law requires district courts in those instances to provide a sufficiently compelling justification to get from point A to point B, particularly when the gap is as wide as it is today, with respect to the current defendant. Now, I want to respond to three particular points that my opposing counsel raised. We don't think that the district court provided a sufficiently compelling reason, and I think the district court and my opposing counsel both say the same thing. They say, look, he's had a long, uninterrupted sort of history, criminal history. But that's just not the case. That's not reflected in the record. And even the district court acknowledged this. After these tragic accidents that occurred when he was 13 years old, he was, in fact, trying to turn his life around. This is something the district court picked up upon. Before being shot in the head, he was taking community college classes. He was running track and field. He was getting a carpentry certification, working a full-time job. Those are the steps that we want to see in society. But that ended when he was shot in the head, and that's a criminal record that we see. The second and, I think, related point is that my opposing counsel would sort of have you believe that this is outside the mind-run of cases, and I think, Judge Schranch, to your point, it isn't. It isn't, and it's something that the sentencing guidelines specifically contemplate. 4A1.2K specifically says when you violate parole or probation, it's still a single sentence, and, quote, the maximum three points should be assigned. If you violate it once or violate it twice, it's still that same single sentence, and the maximum three points should be assigned. And finally, Your Honor, opposing counsel has talked about how this is beyond the scope of your review. It's not. Under Gall and under precedence, sure, we do defer to the district courts in some instances, but we don't defer when they've used their discretion, and we certainly can conduct a more searching review when an upward variance is as significant as it is here. And I think under that searching review, this court should reverse the district court sentence and remand for resentencing below. Thank you. Thank you very much. The case is submitted. The next case may be called. Oh, by the way, Mr. Wayne, I noticed here you were appointed on the Criminal Justice Act, so we would like to thank you for accepting the appointment and know that you do that as a service to the court, so we're very grateful. Thank you. Yeah, absolutely. Thank you. If I could, I would also just note that I'm from Cincinnati, and my high school English teacher is back here watching my argument. I really appreciate it. I didn't send her the briefs because she probably would say that I haven't improved my writing at all, but I really do appreciate that. Thank you very much. Thank you very much.